# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **NORMA J. QUALLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-20-48-SPS |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Norma J. Qualls requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-seven years old at the time of the most recent administrative hearing (Tr. 494). She has a high school education and has worked as a kitchen helper and retail cashier stocker (Tr. 494, 519). The claimant alleges that she has been unable to work since February 7, 2006, due to neck pain, back pain, and problems with her wrists and left shoulder (Tr. 175).

## Procedural History

In February 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 125-28). Her application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled through her date last insured of March 30, 2011, in a written opinion dated March 1, 2013 (Tr. 9-19). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-14-134-SPS and remanded the case on September 28, 2016 (Tr. 548-58). On remand, ALJ Glenn A. Neel conducted a second administrative hearing and determined that the claimant was not disabled through her date last insured in a written decision dated January 15, 2020 (Tr. 473-83). The claimant did not file written exceptions to the Appeals Council challenging the ALJ's January 2020 decision and the Appeals Council did not assume jurisdiction, so the ALJ's January 2020 decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.984(d).

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with occasional balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering and climbing ramps and stairs, but never climbing ladders, ropes or scaffolds (Tr. 476). The ALJ further found the claimant must avoid concentrated exposure to hazards, including no driving as a part of work (Tr. 476). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i. e.,* furniture rental consultant, usher, and counter clerk (Tr. 481-83). Alternatively, the ALJ found the claimant could also perform the sedentary jobs of call out operator and surveillance system monitor (Tr. 482-83).

**Review**

The claimant contends that the ALJ erred by failing to: (i) support his RFC assessment with specific references to evidence in the record; (ii) properly evaluate the opinion of treating physician Dr. Terrill Simmons and consultative examiners Dr. Robert Nebergall, Dr. Anne May, and Dr. Myra Gregory; and (iii) properly evaluate her subjective symptoms. The Court agrees that the ALJ erred in considering the opinion evidence and in assessing the RFC at step four, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's lumbosacral spondylosis, mild degenerative disc disease of the cervical spine, history of left shoulder surgery, and history of bilateral carpal

tunnel surgery were severe impairments (Tr. 475). The medical evidence relevant to this appeal reveals that the claimant underwent a left wrist carpal tunnel release in April 2005 and was released to return to normal activities with her left hand in July 2005 (Tr. 272-73).

In August 2005, the claimant injured her neck, back, and left shoulder at work (Tr. 141-42). After a failed attempt at physical therapy and continued complaints of neck pain, the claimant was sent for a cervical spine MRI, the results of which revealed mild loss in height of the C4-5 intervertebral disc with a minor annular disc bulge, but no central canal stenosis or exiting nerve root compression (Tr. 245, 260).

In July 2006, the claimant followed up with Dr. Simmons (Tr. 269-70). He indicated the claimant's cervical MRI "demonstrated no bony and only minimal disk changes" and stated that her best treatment was exercise, sleeping with a flat pillow, avoiding prolonged sitting with her head flexed, and avoiding activities that require looking toward the ceiling such as painting (Tr. 269). Dr. Simmons further indicated the claimant's degenerative changes in her neck were minimal, should be tolerated, and could be treated at home (Tr. 269). Regarding the claimant's back, Dr. Simmons identified a bulging disc at L4-5 abutting the L5 nerve root, which he stated did not require surgery (Tr. 269). Dr. Simmons stated the claimant should be careful bending forward and lifting from the floor, lifting heavy objects, and doing repetitive lifting (Tr. 269).

The claimant underwent a left shoulder decompression and rotator cuff repair, as well as a right carpal tunnel release in October 2006 (Tr. 261-62, 268). Dr. Simmons consistently noted the claimant's left shoulder was doing well at post-op appointments (Tr. 263-67). At a follow-up appointment in March 2007, he found good motion with

weakness and crepitation in the claimant's shoulder (Tr. 263). Dr. Simmons opined that the claimant could return to work with no lifting above the shoulder level on a repetitive basis, limiting weight lifting above the chest level to twenty pounds, and no repetitive activity above shoulder level such as painting or wallpapering (Tr. 263). Dr. Simmons indicated the claimant's shoulder would continue improving and would approach 80% of normal function when she reached maximum healing (Tr. 263).

In November 2007, the claimant presented to Dr. Nebergall for a court-ordered independent medical evaluation related to her workers' compensation claim (Tr. 150-52, 282-83). She reported her shoulder pain was nearly resolved but experienced back pain occasionally radiating to her right leg with prolonged standing, walking, or sitting (Tr. 283). On physical examination, Dr. Nebergall found 160 degrees of forward flexion in the claimant's shoulder, tenderness over her lumbar paravertebral muscles, and tenderness to the spinous processes of L1-5 (Tr. 283). He assessed the claimant with lumbar radiculopathy and opined she had been capable of working light duty since March 21, 2007, where the work was "mostly seated with intermittent standing and a lifting restriction of five pounds." (Tr. 282-83). Dr. Nebergall recommended (and the Workers' Compensation Court ordered) consultation and treatment with spine specialist, Dr. Steven Anagnost (Tr. 141-45, 282-83).

The claimant presented to Dr. Anagnost on March 28, 2008 and reported back pain and leg pain (Tr. 289-90). On lumbar examination, Dr. Anagnost noted the claimant experienced pain at 10 degrees of extension and 30 degrees of flexion and had tenderness to deep palpation at L4-5 (Tr. 289). He also noted slight dysesthesia along the lateral calf

and plantar aspect of the claimant's left foot, but no clonus, upgoing toes, or severe motor deficit (Tr. 289). He assessed the claimant with lumbar instability at L4-5, radiculitis, and back pain, and referred her for an MRI, the results of which were unremarkable (Tr. 274). At a follow-up appointment on April 25, 2008, Dr. Anagnost stated the claimant's prognosis was good for nonoperative treatment, provided a corset for support, and recommended epidural steroid injections (Tr. 288, 346-52). The claimant underwent a series of epidural steroid injections that initially increased her pain, but eventually provided temporary relief (Tr. 276-77, 346-52). On January 15, 2009, Dr. Anagnost found the claimant reached maximum medical improvement and released her to return work without restrictions (Tr. 276).

      The Workers' Compensation Court also ordered treatment by Dr. Martucci, a pain specialist (Tr. 137-38). Dr. Martucci administered epidural steroid injections in February 2009 and May 2009 (Tr. 331, 343). At a follow-up appointment on June 18, 2009, the claimant indicated the injections were helpful, but she continued to experience significant pain (Tr. 329-30). Dr. Martucci did not believe she could return to work at that time (Tr. 329). He recommended a lumbar discogram, the results of which were normal (Tr. 324-30). Dr. Martucci performed a radiofrequency ablation at L3-4, L4-5, and L5-S1 in December 2009 and January 2010 (Tr. 317-19). On February 22, 2010, the claimant reported the ablations improved her pain and that she did not want any further procedures or evaluation (Tr. 315). Dr. Martucci's physical examination was normal and he found the claimant reached maximum medical improvement (Tr. 315). Thereafter, the claimant's treatment for back pain consisted of medication management by providers at Tulsa Pain

Consultants through July 2019 (Tr. 307-14, 364-65). At these appointments, the claimant consistently indicated that medications made it possible for her to perform her daily activities and her physical examinations were normal (Tr. 307-14, 683-735).

In September 2010, Dr. May performed impairment rating evaluations as to the claimant's upper extremities and back in connection with her workers' compensation claim (Tr. 298-305). Dr. May ultimately concluded that the claimant was unable to return to her previous employment and recommended that she undergo vocational rehabilitation to obtain a more sedentary type of employment that does not require repetitive motion of the upper extremities (Tr. 301, 305).

Dr. William Cooper conducted a consultative physical examination of the claimant on April 27, 2011 (Tr. 356-62). He found full range of motion in the claimant's left shoulder, lumbar spine, cervical spine, and thoracic spine, but noted pain with testing in her left shoulder and lumbar spine (Tr. 358). Dr. Cooper also found full grip strength in the claimant's hands and indicated she could perform gross and fine tactile manipulation (Tr. 358).

On June 6, 2011 and September 22, 2011, state agency physicians determined that the claimant did not have a severe impairment as of March 31, 2011, her date last insured (Tr. 373-374).

On January 23, 2012, Dr. Gregory completed a physical medical source statement at the claimant's request (Tr. 375-77, 512-13). Dr. Gregory indicated that the claimant could lift/carry ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, and that she must periodically alternate sitting and standing, due to

pain in her left hip and leg (Tr. 375-377). She further indicated the claimant was limited in pushing and/or pulling with her upper and lower extremities, noting that her grip strength was about normal but she could not sit or stand very long and had to change positions frequently (Tr. 376). Dr. Gregory also found the claimant could occasionally climb, balance, kneel, crouch, and crawl, indicating that she "just cannot do much" due to disc problems in her back (Tr. 376). As to manipulative limitations, Dr. Gregory indicated the claimant was limited in her ability to reach, handle, finger, and feel due to back pain and discomfort (Tr. 377). She also found the claimant could tolerate limited exposure to temperature extremes, humidity/wetness, vibration, hazards, and fumes, odors, chemicals, and gases (Tr. 377).

In his written opinion, the ALJ summarized the claimant's testimony and the medical records. In discussing the opinion evidence at step four, the ALJ gave little weight to the state agency physicians' opinions that the claimant had no severe impairments because they were not consistent with or supported by the opinions of Dr. Simmons and Dr. Anagnost (Tr. 480). He then gave some weight to Dr. Simmons' opinion that the claimant could lift twenty pounds but should not perform repetitive activity because it was supported by some objective evidence but further found his opinion was temporary because the claimant was recovering from shoulder and carpal tunnel surgery at the time and Dr. Simmons indicated she was expected to improve further (Tr. 480). The ALJ gave little weight to Dr. Nebergall's five-pound lifting restriction because it was based on a one-time examination and was generally inconsistent with other (non-specific) evidence and opinions in the record (Tr. 480). The ALJ then gave some weight to Dr. May's opinion

that the claimant needed to avoid repetitive motion with her upper extremities but gave little weight to her opinion that the claimant required sedentary work (Tr. 481). As to Dr. Gregory's opinion, the ALJ gave little weight to her opinion that the claimant was limited to sedentary work because she was a friend of the claimant's, the record contained no evidence that she examined the claimant, she based her opinion on the claimant's subjective statements, and she did not support her findings with objective evidence (Tr. 482). Nonetheless, the ALJ adopted some, but not all, of Dr. Gregory's limitations (Tr. 476). The ALJ then gave significant weight to Dr. Anagnost's opinion that the claimant could work without limitations as of January 2009 because it was supported by most of the objective medical evidence (Tr. 481-82).

    The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." [2] *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the

---

[2] The regulations governing the consideration of medical opinions were revised for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because the claimant filed her application for Title II benefits in February 2011, the previous regulations apply. *See* 20 C.F.R. § 404.1527.

treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

      Here, the ALJ adopted Dr. Simmons' opinion that the claimant could lift twenty pounds and rejected his opinion that the claimant should not perform repetitive activity but did not mention or discuss *any* of his other limitations (Tr. 476, 480). The ALJ thus failed to explain how Dr. Simmons' July 2006 opinion that claimant should avoid prolonged sitting with her head flexed and activities that require looking toward the ceiling, and his March 2007 opinion that she could not lift anything above shoulder level repetitively were accounted for in the RFC assessment, or articulate any reasons for rejecting them. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while

ignoring other evidence."). In addition to evaluating Dr. Simmons' findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of his opinion persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The ALJ likewise failed to conduct the appropriate analysis regarding the consultative opinions of Dr. Nebergall and Dr. Gregory. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). In this case, the ALJ rejected Dr. Nebergall's five-pound lifting restriction but did not discuss or analyze his finding that the claimant could only work mostly seated with intermittent standing. The ALJ also rejected Dr. Gregory's opinion that the claimant was limited to sedentary work but did not discuss or analyze *any* of her other findings despite apparently adopting her postural and manipulative limitations in the RFC.

This analysis was particularly important because both Dr. Nebergall and Dr. Gregory suggested the claimant needed to alternate sitting and standing, and the VE testified that an at-will sit/stand option would eliminate all of the jobs she identified (Tr. 282, 376, 522).

Additionally, the ALJ rejected Dr. Nebergall's opinion partly because it was inconsistent with other evidence and opinions in the record. This would have been a legitimate reason for rejecting his opinion if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted].

Since the ALJ failed to conduct the appropriate analysis regarding the opinion evidence in the record, his RFC thus fails to account for *all* the evidence in the record. *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."). Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If

such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**